Liberty Life Assurance Company of Boston Good morning. Good morning, Your Honor. Jason Coffman, along with my colleague David Glass, we represent the appellant, Ms. Melinda Webb. May it please the court, the district court should be reversed for improperly applying a limitation clause in the ERISA policy. The relevant language of the limitation provides that a legal action may not be commenced either until 60 days have passed after the proof of claim or more than one year after the proof of claim is required. That's the exact precise language in the policy. Now, that term required is critical because if you look over to proof of claim, you find that proof of claim is required no later than 30 days from the date of loss or in no event later than one year from the time proof of claim is otherwise required. The way in which we interpreted the limitation process was one year past either 30 days or one year past the one year more lenient time for submitting the proof of loss as being required. The defendant, however, interprets it differently and they do so by not using the term required but using the term submitted or filed. And they do so because there's no question in this case that Ms. Webb did in fact submit the proof of loss within the 30 days. So by their reckoning, she had a year from the time that she submitted it or the time that she filed it. That's not what the language says and that's critical because their interpretation cuts the limitation period by almost a year. The parties do not dispute that if our interpretation is correct, we're timely. If their interpretation is correct, we're not timely. The reason that our interpretation is correct is because it relies precisely, precisely on the language. It doesn't flip in terms filed or submitted with required. It sticks with required the entire time. Your Honors, they argued a misinterpretation not only of the relevant policy but they misinterpreted a federal court that looked at this precise language and that would be the Harrison v. Liberty Assurance Company which you'll find at 2000 Westlaw 211-8954. It's a Northern District of Florida case from May 27, 2011. The litigant in that case urged two interpretations of the same language. They said because of the or, you could file either 60 days after you've submitted your proof of claim or within a year of you submitting the proof of claim. And they said since it's or, then everybody's going to choose 60 days after so there's no limitation period. They urged the second interpretation that I've just given to your court a moment ago. The district court said the first interpretation would essentially eliminate the limitation. So I'm going to reject that interpretation. It's not reasonable. The second one is reasonable. I think that's a reasonable interpretation. It's a little more lenient but it's reasonable. You get two years. The problem is you're five years. So the court said even under your interpretation it's not reasonable. That case is significant, Your Honor, because it demonstrates that a federal judge in Florida had the same interpretation as did we. That it was two years and 30 days if you read the precise language of the policy. The difference between Harrison and us is we're within the two years and that's not disputed, Your Honor. Your Honors are well versed in the fact that insurance policies should be construed against the insurer to the extent they're ambiguous. We think our interpretation based on the precise language by keeping required the same throughout and not interchanging the words filed and submitted that we're well within and we have the proper interpretation. To the extent that the other interpretation is the proper one, ours is not unreasonable. Therefore, the policy is ambiguous. If it's ambiguous, then it should be construed in our favor and we were timely. There's one other issue in this case that demonstrates why their interpretation of the policy limitation period is patently unreasonable and I'm going to talk about that briefly as I get to the other issue which I did not raise on appeal. We did not brief it but they have brought it up. The district court did not rule upon it and that is whether or not the ERISA administrator should be reversed for denying benefits. The court, as you know below, stopped us on limitation grounds, never reached that issue. But the limitation period here is patently unreasonable due to the facts of the case. The claim was denied on or around January 27th of 2014. We appealed. The appeal was denied on June 23rd, 2014. But importantly, in the alleged denial, the language reads, further review will be conducted by Liberty. Now we took Liberty at its word and we submitted additional materials on or around May 5th of 2015. What took so long? Your Honor, I racked my brain for the last week and as I recall to the best of my ability, we were trying as best we could to get the coroner to tell us how she reached the conclusion. Your Honor, an ERISA fiduciary, as they suggest, is not allowed to just rely upon authorities. They've got to do a fair and impartial review. That coroner's report, and if you read the Acri case and the Burnett case, I'm going to go into the Acri case in detail because I believe he's going to raise it. They talk in that case, yeah, it says suicide shot self, but it doesn't say how she came or he came to that conclusion. The same thing with this coroner. We were trying to catch up with her. It took us a great deal of time to speak to her and try to figure out what she had used in determining what she did. It's not part of the record, Your Honor. I don't feel comfortable, but Your Honor, what is part of the record is her report merely concludes suicide without providing any rationale. As we pointed out in our May 5th, 2015 letter, which did take us a little bit of time, it took us about almost six to nine months to put together all that information, was all of the information a fiduciary would do if they were exercising their fiduciary responsibility. She didn't follow the CDC manual. We submitted the CDC manual. We pointed out that there was no suicide note. We talked to friends and family that said that this gentleman was not suicidal, had never had any suicide tendencies, that he had a young daughter who was two years old, a new marriage, and he was looking for the future. He had a job where he made almost $400,000 a year. He had recently purchased a year-long subscription to the Georgia Aquarium. All this is in the record. Now, that may seem insignificant, but if you read the CDC guidelines, people that commit suicide, they don't make long-term plans. They also don't do things like shoot themselves 30 days before the exclusion is going to wave away. They wait 30 days. They also take steps, again, this is all in the record, it's in the manual, they take steps to make sure you're not resuscitated. They don't shoot themselves in the kitchen where you're going to hear it. They go down to the basement where you won't hear it, so they can't be resuscitated. If you go by that CDC manual and the other materials that we submitted on May 5th, 2015, you see that there's no evidence at all that he intended to commit suicide, and if there's not, we should have been provided those benefits. But the typo in the letter that they claim is a typo, we don't think it's a typo, and the information that we submitted not only demonstrates the obligations that they should have exercised as an ERISA fiduciary, but it also demonstrates the patented unreasonability of their limitation clause. Because think about it. They tell us in June, further review will be conducted. By May, we're submitting additional information. A couple of weeks later, they say, oh, thank you for pointing out the typo. They never considered that information, never. They admit that. They deny the claim. They wrongfully denied it before, but here's why that is significant. That is significant because they are suggesting that we should have filed well before we got the final notice from them on May 15th, that there's just been a typo. We're sorry that we said we'd conduct more review and you went out and did all this work. It's just a typo. Your Honor, ERISA should . . . Don't we really need, assuming you lose on the first point, and so you only had a year and 30 days instead of two years and 30 days, if you have two years and 30 days, you win. Is that right? Well, Your Honor, we would, presumably under our interpretation, we would go back before Judge Thrash for him to reach the issue of was the death suicide or not. And we believe we can carry that. That's right. That's right. They think, Your Honor . . . But if you lose on that, so you had only a year and 30 days, then the only way you can prevail on this appeal is if there is a fact finding that you, in fact, did take that further review as truth and not as a typo. And then, in fact, that you did rely, so there'd have to be two fact findings on remand. Number one, that a reasonable person could read in that letter, think that the review was ongoing. And second, that you, in fact, relied. Is that not true? I believe Your Honor has correctly stated. The third reason under the limitation issue that we believe remand is appropriate. Thank you. We'll hear from you in a moment. I'm going to reserve the remaining five minutes of my time, Your Honor. Thank you. Good morning. Good morning. My name is Andrea Cattleland. I'm here with Sanders-Carter on behalf of Liberty Life Assurance Company of Boston. A plaintiff or appellant has just argued that the district court misinterpreted both the contractual limitations provision and the proof of claim provision in the policy. He claims that in reading those provisions together, a party can either submit their proof within 30 days or a year and 30 days after the date of loss. But that is not what these provisions state. The policy states that proof must be provided no later than 30 days from the date of loss unless it's not reasonably possible to do so, in which case you have an additional year. In this case, it was reasonably possible for Mrs. Webb to submit the proof within 30 days because she did submit the proof within 30 days. Do you agree that if the administrative process was incomplete at the time the limitations period in the policy expired, that it would be unreasonable to apply the limitation? Would you repeat that? If the administrative process was, in fact, incomplete, would you agree that it would be? I would agree with that, but that is not the case in this case. Okay. I just want to make sure I understood. She was entitled under both the policy and under ERISA to one appeal. She appealed in March and April of 2015. That appeal was denied in June 2015. She had seven months left within which she could have filed suit, but she did not. Instead... Of course, she says she didn't because you told her you're still reviewing the claim. That is correct. As Judge Anderson pointed out, they would have to prove that their reliance on the omission of that word in the letter was reasonable. It simply is not. That's what we're . . . But, I mean, the district court never made that decision. No. Yeah. We're not going to make that decision, I don't think, for the first time on appeal. Okay. Well, but . . . Is that not true, what she said, that we really need to remand it to the . . . assuming you went on the first point about the year and 30 days, we would still have to remand in order to determine whether or not, in fact, she did rely on that . . . whatever it is in that letter where she talked about further review? I don't think that is necessary because she had 30 days to submit proof she did. She then had one year within which to file suit. But you just, I thought, answered, Judge Pryor, to the effect that if she reasonably relied on the further review language in that denial letter, if she did that, then it probably would be unreasonable to have the statute of limitations run before the review was completed. Okay. The bottom line is she had a deadline of January 2015 to file suit. That is when her contractual limitations period ran. She did not come forward with this additional evidence or make this argument that she had misunderstood the letter or reasonably relied on the letter until four months after she contends she was entitled to submit proof and four months after we contend she was entitled to file her lawsuit. But you've told us, I think, that if the administrative process was incomplete, then it was reasonable for her to wait for that process to be completed, right? But it wasn't incomplete. Under the terms of the policy and under ERISA, she had one year and 30 days. It expired in January of 2015. And so she had exhausted her administrative remedies. She simply came back four months after limitations had expired and submitted additional evidence. At no time in the interim did she contact Liberty and say, am I reading this letter correctly? Are you still investigating? She didn't say, I'm contacting the coroner to find something out, which is nowhere in the evidence. And that works the other way, too. I mean, did you ever contact her and say, you know, in that letter where we told you we're conducting further review, we didn't mean that. We meant to say we're not conducting any further review. Did y'all ever contact her? No, we did not contact her because it was, in fact, a typo. And elsewhere in that letter, it also says your appeals process has been exhausted. You have the right to receive all relevant documents. You have a right to bring a civil action under. She says, you know, the letter said it both ways. I mean, the letter is internally inconsistent, isn't it? And we're talking about the June 23, 2014 letter. It's internally inconsistent, right? The letter does say further review will be conducted. But when you read the letter in its entirety, it outlines all of the steps that she has to take. It says liberty will not be. So what you're trying to argue now is that no reasonable person could have read that letter and concluded that further review was, in fact, being conducted. That's the only way you can prevail on that point in this court, because otherwise it would be a question of fact. Well, that is correct. They had said in the letter, we're closing our file and we regret that we don't have a more favorable decision for you. And please call if you have any questions. So no, we don't believe any reasonable person would have relied on that. And to the extent that is what she believed or questioned, we believe she should have picked up the phone. She was, in fact, represented by counsel at the time this letter was issued. I guess I will move forward from that to, so of course, it's our conclusion that the summary judgment must be upheld based on the contractual limitations provision. But even if it is not, this court has the right and can affirm a summary judgment on any ground. And in this case, the summary judgment motion included another ground, and that was that the suicide was, I'm sorry, that the death was a result of suicide and not an accident. And that that decision was not arbitrary and capricious. And the district court did no finding a fact on that? He did not. I mean, you don't think we're going to do that now as a court of appeals, do you? I think that you have the authority to do that. And the reason why I think you might do that is because, in our mind, it is such a straightforward case. The question here is whether it was an accident or a suicide. And the evidence that was before Liberty at the time it made its initial claim decision all pointed to the direction that it was a suicide. Three days after the death. That's not what they say. I mean, they say new marriage, 30 days away from this provision expiring, a year membership in the aquarium. There's not. All of that evidence was the evidence that they submitted four months after they were entitled to file suit and four months after, under their theory, they were entitled to All of that evidence was submitted then. You say all the evidence points in one direction. I'm just saying there's evidence, they say, that points in the other direction that's never been evaluated by a fact finder. Right. Because they submitted it after the administrative remedy had been exhausted. So at the time of the initial claims decision, what they had was a phone call from the employer saying this is a possible suicide, a telephone call from a Liberty representative to the appellant herself in which the appellant herself confirmed that her husband had committed suicide and a death certificate in which the coroner, who is a public official charged with investigating and determining both the cause and the manner of death, concluded that the death was a suicide. That's all they had when they made their initial decision. Of course, they found it was a suicide. Then she appealed. On appeal, she submitted five additional pieces of evidence. Four of them were reports from the sheriff's office, who also investigated this incident. In the main investigative report, the conclusion was reached, just as it was in the coroner's report, that this death was the result of a suicide. We have a supplemental incident report from Officer Rowe in which he states the appellant told the 911 dispatcher he just did this. He did this on purpose. We have the supplemental incident report from Officer Chambers in which Officer Chambers describes the conversation that he had with the appellant immediately after the death in which she describes the events of that evening. She explains, we were drinking that evening. My husband got a phone call from his husband. He became very upset. His father. I'm sorry, his father. Her husband became very upset. She had never seen him change his demeanor so quickly. He started talking about incidents from his youth that she had never heard about. He drank more and more. He went and retrieved the gun from the locked safe. She tried to wrestle it away from him. She begged with him to think about his relationship with their daughter, their relationship. And he went down the stairs and he shot himself. This was how she described the incident to the officer on the night of his death. And that is the information that Liberty had. All of those reports, the only evidence that they had before administrative remedies were exhausted, to the contrary, was an affidavit from the appellant in which she recants three of her statements to Officer Chambers. She said, well, he didn't, I don't even know if I said this. He also said, I'm going to end it all. She said, well, he didn't really say that. And she recants a few other things that she said to him. But at the end of the day, she didn't recant the statement she made to the Liberty claims investigator. She didn't recant the statement she made to the 911 dispatcher. It's very clear that this is just self-serving. This is something that was written after her claim has been denied, after she's retained a lawyer. She also includes statements in there to the effect that, you know, she didn't believe he meant to commit suicide, et cetera. But her subjective beliefs constitute no probative evidence. And Liberty was perfectly within its right to give less credence to that evidence when faced with the overwhelming evidence that it was, in fact, a suicide. And to the point, even though nobody can consider this evidence that came in after the administrative remedies were exhausted, even if the court could consider that evidence, and even if it shows he had dreams and plans for the future, that doesn't take away from his state of mind that night when this happened. Something happened that night. He spiraled out of control and took his own life. Unless the court has any other questions. Thank you. Your Honor, may it please the Court. She talks about no one being able to consider this evidence. I would point the Court to the Acri case where the district court there exercised its discretion, which both sides agree, Judge Thrash, if you were to remand it to him, has the discretion to send it back for a full and fair review, which would then allow us to even supplement the record further. But clearly, it would allow them to consider the evidence that was submitted with our May 5th, 2015 letter. That letter was approximately 90 pages. It was a four-page letter with the nuts and bolts, but the additional evidence we submitted was substantial. You're talking about your May 15th, 2015 letter? Yes, Your Honor. I believe it was May 5th. In response to the . . . I'm sorry, yeah, you're right, May 5th. Just a few quick points, and I may not need much time here because I understand that the Acri case is a consultation issue. But just a couple of points to what they say, and I want, again, I don't want to rely too heavily on the Acri case, but I think it's well-reasoned and well-laid out, and many of the issues dovetail in those cases. I'd also point out to the Court, it's interesting, but the same firm that represents the appellee here represented the appellee in that case. And the Court quotes, an ERISA administrator cannot rely on unproven assumptions that are on record, no matter how strongly it believes those assumptions to be. Melinda Webb did say some things. She never said suicide. She said he did this to himself. She said he did this on purpose. That's what the officers record. Now, this was not at the time of his death. This was while he was in the kitchen bleeding to death. They conducted these interviews that night. Now, later, when she had time to calm down and think about what was said, she did recant those things. At that time, Your Honors, and this is undisputably in the record because this was submitted before the typo letter. Okay? This is in the record. Her affidavit was the only sworn statement. The police officers, the authorities, they never got to see that affidavit recanting those things. She talked about him being upstairs or her being upstairs originally. She later would change that version of events. But here's the critical point, and we make this in the brief to the extent we cover it in the reply, the issue that they raised for the first time. Nobody saw this. Nobody knows what happened here. Nobody. And what our point is, is that the authorities, based upon some things that she said, she did this to himself. Maybe she meant, like my mother, you did this to yourself, Jason. You got an F on that test because you didn't study. Now, she doesn't mean that I intended to go get an F. She meant you engaged in behavior that led to that. Well, who knows what was going on? Who knows? He'd been drinking. He had a firearm. What is more believable, that a middle-aged person making $400,000 a year, making all the plans for the future and a great life, decides after a fight with his wife and a bad phone call with his dad, assuming all that's true, to kill himself? Or he went down to the kitchen and he was in an exasperated state, waving the gun around, and it went off. See, the United States of America, there's a lot of firearms, there's a lot of firearm deaths. Nobody knows what happened. If no one knows what happened, it's their burden to prove it. It's their burden. They can't prove it. Instead, what they did— But does the record show where the bullet went into, where the bullet wound was? Your Honor, the autopsy report, which is in the record, demonstrates that it was a shot to the head. That's all we know. There was no examination, and again, I may be leaning too heavily on Acri, but they point out in there that, just as in Acri, as in here, the coroner doesn't say how she concluded suicide. She just says, we don't, I don't think there's any dispute that the gun went off. The question is, did he intend to do it, or was it an accident? And we believe that we can demonstrate, again, if that issue is reached, we don't think it should be at this juncture, that we can prove that it wasn't a suicide. Your Honors, I'll close quickly. If you look at page 8 of their brief, the entire language they were arguing over here, it's very simple. Page 8. There it is. It's not too much language. Legal proceedings, you either, you can't, you got to wait 60 days, and you got to do it a year after proof of claim is required, critically. Proof of claim is two options, 30 days, or a no of any year. By my reckoning, that's two years and 30 days. You get to choose. I don't think they can come in later and go, well, in fact, you were able to do it, so you can't take advantage of that year. We might not have been able to take advantage of the year to submit the claim. That may be true. That's not what this says. The language is required. Please hold them to required. Do not let them interchange filed and submitted, and we believe the case should be demanded to Judge Thrash. Unless you have any questions for me, Your Honors, I would yield.  We appreciate the presentation.